[No. A131881. First Dist., Div. Four. June 13, 2012.]

PATRICIA CASEY, Plaintiff and Appellant, v.
PERINI CORPORATION, Defendant and Respondent.

**COUNSEL**

Brayton Purcell, Alan R. Brayton, Lloyd F. LeRoy and Richard M. Grant for Plaintiff and Appellant.

Brydon Hugo & Parker, James C. Parker, Thomas J. Moses, Lisa M. Rickenbacher and Shelley K. Tinkoff for Defendant and Respondent.

**OPINION**

**REARDON, J.**—The trial court granted summary judgment to respondent Perini Corporation (Perini),[1] resulting in the dismissal of an asbestos action filed against it by appellant Patricia Casey and her late husband John Casey (plaintiffs).[2] On appeal, plaintiffs contend that the trial court erred by failing to find that Perini did not meet its initial burden of production of evidence in support of its summary judgment motion, by improperly excluding from evidence their expert witness declaration, and by disregarding their evidence that Perini exposed Casey to asbestos. We affirm.

## I. FACTS

Between 1962 and 2001, Casey worked as a plumber and pipefitter. He performed this work at countless jobsites. Casey was diagnosed with mesothelioma in January 2010. On March 22, 2010, plaintiffs filed a complaint for personal injury and loss of consortium against numerous defendants, including Perini, alleging that Casey developed mesothelioma through his occupational exposure to asbestos.

Plaintiffs identified Perini as having been the general contractor at three jobsites in San Francisco where Casey had worked: the Civic Auditorium (Auditorium), the Alcoa Building (Building), and the Hyatt Regency Hotel (Hotel). Perini's role as general contractor at these sites was to hire subcontractors (such as Casey's employer), coordinate the timing and scope of their work, and keep the projects within budget.

During discovery, plaintiffs asserted that Casey "was exposed to asbestos by working in close proximity to trades employed by [Perini] handling and disturbing asbestos-containing products" at the Auditorium, Building, and Hotel jobsites. Other than naming Casey, plaintiffs were unable to identify any lay witness with knowledge of facts supporting their claims against Perini.

At his deposition, Casey testified that he had worked at the Building as an apprentice plumber for approximately six months in the mid-1960's. He did

---

[1] Perini is now known as Tutor Perini Corporation.

[2] During the pendency of this appeal, John Casey died. His death certificate lists mesothelioma as the cause of death. We have appointed Patricia Casey as his successor in interest on appeal. (See Code Civ. Proc., §§ 377.20, subd. (a), 377.30, 377.31.) To avoid confusion, we will refer to both Caseys as plaintiffs, although technically Patricia is the sole plaintiff.

not know if any of the products he had used, or were used by others in his presence, contained asbestos. He was also unable to identify the brand name, manufacturer or supplier of any of the materials that had generated the dust later swept up or disturbed by Perini workers. Casey did not know if the dust and debris contained asbestos. As to the Auditorium jobsite, Casey recalled that Perini was involved in carpentry and framing. To the extent Perini's activities created dust and debris, Casey thought there was "probably asbestos in whatever [the Perini workers] were cleaning up." Casey, however, did not know the brand name or manufacturer of any of the materials used at the Auditorium jobsite. He also could not differentiate between products that allegedly contained asbestos and those that did not. Finally, as to the Hotel jobsite, Casey did not know whether Perini was even the general contractor at that site.

Relying on Casey's deposition testimony and plaintiffs' discovery responses, Perini moved for summary judgment, arguing inter alia that plaintiffs had no evidence indicating Casey was actually exposed to asbestos as a result of any Perini activity. Plaintiffs opposed the motion, arguing both that Perini did not meet its threshold burden of showing that plaintiffs could not establish all elements of their causes of action and that even if it did, they demonstrated triable issues of material fact about Casey's exposure to asbestos.

Prior to the summary judgment hearing, plaintiffs served new interrogatory responses claiming—for the first time—that Casey had been exposed to asbestos-containing surfacing materials at the Auditorium, Building, and Hotel jobsites. Plaintiffs, however, never identified the brand name, or the suppliers, of any surfacing materials used at the jobsites. They also failed to provide any evidence regarding the contents of the construction materials used at the jobsites and failed to identify anyone who had knowledge of the contents of such materials.

Plaintiffs submitted an expert witness declaration from Kenneth Cohen. In his declaration, Cohen opined that all "surfacing materials," particularly fireproofing, used in the construction of office buildings prior to 1980 contained asbestos. He based his opinion on a set of assumed facts and two federal Occupational Safety and Health Administration (OSHA) regulations that "presumed" all surfacing materials present in buildings constructed before 1980 contained asbestos. (See 29 C.F.R. §§ 1910.1001 (2010) (general industry asbestos standard), 1926.1101 (2010) (construction asbestos standard).) Cohen also relied on records from the Bay Area Air Quality Management District (BAAQMD) regarding the Building, which revealed that asbestos abatement activities had occurred at this site from 1994 to 2004. According to Cohen, these records constituted "evidence of asbestos in the original structural fireproofing material . . . ."

Perini objected to Cohen's declaration, challenging, among other things, its foundation, as well as the expert's reliance on the OSHA regulations and the BAAQMD records. Plaintiffs argued that their expert properly relied on the regulations and records.

The trial court heard the summary judgment motion over the course of three hearings in November 2010. At the end of the first of these hearings, the trial court denied Perini's motion for summary judgment on all issues other than asbestos content. It invited plaintiffs to submit further opposition on two issues—the relevance of the OSHA regulations and the effect of the upcoming deposition testimony of Perini's person most knowledgeable (PMK). Perini was permitted to respond to any opposition before the next hearing.

In their supplemental opposition, plaintiffs asserted that the OSHA regulations established a legal presumption of asbestos-containing materials and that the trial court was required to consider the reasonable inferences of asbestos exposure stemming from this presumption. Plaintiffs also pointed out that the witness Perini had provided as its PMK had no knowledge of the facts regarding the jobsites where Casey had worked; he also had no information concerning the asbestos content of any product used at those jobsites. The PMK further testified that Perini had no information to challenge the OSHA presumption that materials used in the pre-1980 construction of the Building were asbestos containing.

Plaintiffs also provided the uncertified deposition testimony of Robert N. Sawyer, M.D., defendant's occupational medicine expert, whose deposition had been taken only the day before. Dr. Sawyer testified that Casey's history of occupational exposure to asbestos was sufficient in its aggregate form to cause mesothelioma. Dr. Sawyer further testified that spray-applied fireproofing retardant used on structural steel prior to 1972 more likely than not contained asbestos.

In its supplemental reply, Perini argued that the OSHA regulations were not relevant in the instant case, asserting that the regulations at most created a regulatory presumption against building owners and not against tort defendants. Perini noted that the presumptions were part of a scheme that enables OSHA to force owners of buildings constructed before 1980 to test for the presence of asbestos using OSHA testing procedures and reporting guidelines. Perini added that OSHA enforces these regulations by monetary fines. Perini reasoned that the OSHA presumption should not apply to nonbuilding owners, because the only method for rebutting the presumption is to conduct testing of the buildings, yet there is no evidence that Perini would have the ability or right to conduct such testing.

Following an additional round of supplemental briefing, the trial court held the third and final hearing on Perini's summary judgment motion. At the start of the hearing, the trial court announced that it had determined that the OSHA presumption "is not something that's to be carried forward as a presumption . . . under Evidence Code [section] 600 . . . ." The trial court further questioned whether the presumption could provide the foundation for Cohen's opinion.

In December 2010, the trial court granted Perini's summary judgment motion. In so ruling, the trial court sustained Perini's objections to the Cohen declaration. It found that Perini had satisfied its burden of producing evidence that plaintiffs did not possess and could not reasonably obtain evidence that the materials attributable to Perini to which Casey was exposed actually contained asbestos. The trial court also found that plaintiffs did not produce admissible evidence creating a triable issue of fact on the question of actual exposure to asbestos. In April 2011, the trial court entered judgment for Perini on all causes of action. Plaintiffs timely appealed from the judgment.

## II. DISCUSSION

### A. *Standard of Review*

We review a trial court's grant of summary judgment de novo. (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) California law requires that "a defendant moving for summary judgment . . . present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at p. 854, fn. omitted.)

### B. *Perini Met Its Initial Burden of Production*

We first examine plaintiffs' contention that Perini, as the defendant below, did not meet its initial burden of producing evidence sufficient to make a prima facie showing that plaintiffs cannot establish causation. Perini's motion for summary judgment focused on plaintiffs' negligence claim, as plaintiffs were no longer pursuing the other causes of action (products liability and premises liability) against Perini.

Perini based its summary judgment motion on plaintiffs' minimal discovery responses, contending that its discovery, in the form of Casey's deposition and special interrogatories, was comprehensive and that plaintiffs' factually devoid responses indicated that they could not prove causation. On appeal, plaintiffs contend that their discovery responses provided facts sufficient to require denial of summary judgment and that Perini did not meet its burden of production by merely asserting that plaintiffs had no evidence to support their claims.

### 1. *Casey's Deposition Testimony*

Casey's deposition testimony established that he worked at various jobsites where Perini was allegedly the general contractor. According to Casey, Perini workers swept up or disturbed asbestos-laden debris at the jobsites in Casey's presence. However, when asked about the asbestos materials that would have been cleaned up by Perini workers, Casey admitted that he did not know what materials contained asbestos and what materials did not. Rather, he assumed there was "probably asbestos in whatever they were cleaning up." He was unable to recall the name of any products used at the jobsites.

Casey's deposition made clear that he had no knowledge about whether any of the products that others used or disturbed in his presence contained asbestos. Specifically, he was unable to give a definitive answer when asked if he had any information or knowledge that he was exposed to asbestos through the activities or inaction of Perini. His answer was as follows: "Well, I got what I got. I got it someplace and I got it from dust. . . . So if it wasn't on this job, it was on one of the jobs. You know, was it in that dust, I'm not an expert."

### 2. *Plaintiffs' Interrogatory Answers*

Perini propounded a series of standard asbestos interrogatories, as well as case-specific special interrogatories. In response to standard interrogatories sets one and two, requesting information about Casey's employment history, plaintiffs responded that Casey worked alongside or in close proximity to laborers sweeping and cleaning up debris, whom he believed were employed by Perini at the following jobsites: (1) the Auditorium while employed by Scott Company for eight to 12 months in 1962 and 1963; (2) the Building while employed by Scott Company for six months in 1963 and 1964; (3) on various commercial building jobs while employed by Rodoni-Becker Co. from 1968 to 1981; and (4) the Hotel for six to eight months while employed by Rodoni-Becker Co. Plaintiffs' answers did not establish any specific evidence regarding Casey's exposure to asbestos due to Perini's conduct.

Perini's special interrogatory No. 2 asked plaintiffs to identify "each fact" in support of their contention that Perini was liable to them for exposing

Casey to asbestos or asbestos-containing products. In response, plaintiffs referred to their response to special interrogatory No. 1, which asked plaintiffs to identify each location where they claimed that Casey was exposed to asbestos or asbestos-containing products by Perini. After listing the Auditorium, Building, and Hotel jobsites, plaintiffs stated as follows: "[Casey] worked throughout these buildings installing new plumbing and water lines during new construction. PERINI CORPORATION was the general contractor at [Casey's] worksites. [Casey] identified these PERINI contractors through their hard hats and signs on the jobsites indicating 'PERINI CORPORATION' was the general contractor. [Casey] worked next to carpenters and laborers employed by PERINI CORPORATION. These PERINI carpenters performed framing, installed tracks on ceilings, laid forms, performed finishing, poured concrete including reinforcing the existing structural [sic] with concrete, and laid out partitions throughout the building. *When these PERINI carpenters installed the tracks for the ceilings they would first shoot into the concrete ceiling and then run a wire through the ceiling. This work would disturb the asbestos-containing overspray on the ceiling and cause it to fall down on everyone in proximity and also to fall down all over the floor. [Casey] also worked next to laborers employed by PERINI. These PERINI laborers would clean up and sweep up the asbestos-containing dust and debris in [Casey's] presence.* The laborers would use brooms and shovels when they swept up the asbestos-containing dust and debris and then would place this asbestos-containing debris into a wheelbarrow. This asbestos-containing dust and debris consisted of the asbestos-containing materials used by the plasterers when they performed work to [sic] the interior of the buildings. *When these PERINI laborers swept this asbestos-containing dust and debris it created a lot of dust that [Casey] necessarily breathed.* [Casey] never work [sic] a mask at any of these jobsites. These jobsites where PERINI CORPORATION was the general contractor were the filthiest and dirtiest jobsites [Casey] worked at during his career. [¶] [Casey's] expert will testify that sweeping asbestos-containing plastering materials caused asbestos-containing dust to become airborne. [Casey's] expert will also testify that disturbing asbestos-containing overspray caused asbestos-containing dust to become airborne. As a direct result of defendant's conduct, [Casey] necessarily breathed in asbestos-containing dust." (Italics added.)

This answer was insufficient to support a claim. It contains little more than general allegations against Perini and does not state specific facts showing that Casey was actually exposed to asbestos and/or asbestos-containing products due to Perini's activities. Rather, this answer *assumes*, without any evidentiary support, that the dust and debris allegedly disturbed by Perini workers contained asbestos.

Perini propounded other special interrogatories in its effort to obtain all of the facts known to plaintiffs regarding Casey's exposure to asbestos due to

Perini's conduct. Plaintiffs provided little, if any, substantive reply. For example, Perini asked plaintiffs to "identify" any and all asbestos or asbestos-containing products—by trade name, generic name, or any slang or nickname used in Casey's occupation—for which they claimed Casey had been exposed to as a result of Perini's activities. Rather than provide any identifying facts about the asbestos and asbestos-containing products, plaintiffs referred to their answer to special interrogatory No. 1.

Perini also asked plaintiffs to identify with "specificity" the amount or extent of Casey's exposure to asbestos or asbestos-containing products at each location and also asked plaintiffs to state "every fact" supporting their determination regarding the amount or extent of Casey's exposure at each location. In responding to these questions, plaintiffs again relied on their answer to special interrogatory No. 1.

Perini also asked plaintiffs to identify each person having knowledge of the amount or extent of asbestos exposure. The only person identified by plaintiffs was Casey himself.

As can be seen by this review, plaintiffs answered comprehensive interrogatories by stating in effect that they had no specific facts supporting their claims against Perini. In sum, Perini's discovery was "sufficiently comprehensive, and plaintiffs' responses so devoid of facts, as to lead to the inference that plaintiffs could not prove causation upon a stringent review of the direct, circumstantial and inferential evidence contained in their interrogatory answers and deposition testimony." (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 107 [41 Cal.Rptr.3d 229] (*Andrews*), citing *Scheiding v. Dinwiddie Construction Co., supra,* 69 Cal.App.4th at pp. 76, 83.) Perini met its initial burden of presenting evidence sufficient to make a prima facie case showing that triable issues of fact did not exist regarding causation. (*Andrews, supra,* 138 Cal.App.4th at p. 107.) Therefore, the burden shifted to plaintiffs to establish a triable issue of fact regarding causation.

## C. *Plaintiffs' Expert Evidence Amounted to Speculation*

Plaintiffs contend that the trial court erred in excluding the declaration of their expert for lack of foundation. They argue that any questions going to foundation pertain to the weight and not the admissibility of the expert opinion. As we shall explain, we find no abuse of discretion.

### 1. *Background*

Cohen, a retired industrial hygienist, had been previously employed by California OSHA. Cohen declared that he had "extensive experience consulting on workplace asbestos exposure levels and abatement procedures within

the industry including commercial buildings, office buildings . . . and industrial facilities." He declared, based on his training, experience, and study, that Casey was "near to the manipulation of asbestos containing building products presumed to contain asbestos during the period of 1962 through 1971, including residue from [the] manipulation of firespray which invariably contained asbestos, dust from mixing asbestos containing powder used in materials applied to pipes, fittings . . . and surfacing materials sprayed or troweled-on or otherwise applied to surfaces . . . and [Casey was] working alongside laborers employed by Perini Corporation sweeping and shoveling asbestos containing materials . . . into the air he breathed."

Cohen declared that his opinion that the building materials contained asbestos was based on his training, study, experience, and testing, and reflected "the accepted position of the profession of industrial hygiene which is incorporated into OSHA standards." He further explained that he relied on two OSHA regulations—the general industry asbestos standard (29 C.F.R. § 1910.1001 (2010)) and the construction asbestos standard (29 C.F.R. § 1926.1101 (2010))—that "presumed" that all surfacing materials, including sprayed-on or troweled-on fireproofing materials, present in buildings constructed before 1980 contained asbestos.

Cohen also reviewed the BAAQMD records regarding the Building. He opined that asbestos abatement records in connection with work done at the building in 1994, 1999 through 2000, and 2003 through 2004 constitute "evidence of asbestos in original structural fireproofing material . . . ."

The trial court sustained Perini's objection to the declaration, finding Cohen's conclusion that Perini exposed Casey to asbestos-containing materials was implicitly without foundation, as the OSHA regulations upon which Cohen relied were irrelevant. In so ruling, the trial court explained as follows: "The issue is whether there was or was not asbestos in this debris. The OSHA regulations are designed not to say whether there is or is not asbestos in any particular instance, but to set forth an efficient regulation as to warnings. . . . [¶] . . . [¶] . . . This is a factual inquiry. OSHA doesn't make the decision whether Perini was sweeping up asbestos-containing material. This is . . . a factual inquiry."

### 2. Analysis

██ " 'Cases dismissing expert declarations in connection with summary judgment motions do so on the basis that the declarations established that the opinions were either speculative, lacked foundation, or were stated without sufficient certainty. [Citations.] . . . It is sufficient, if an expert declaration establishes the matters relied upon in expressing the opinion, that the opinion

rests on matters of a type reasonably relied upon, and the bases for the opinion. [Citation.]' [Citation.]" (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 [59 Cal.Rptr.3d 618].)

■ Citing Evidence Code section 801, subdivision (b), plaintiffs argue that it was entirely reasonable for Cohen to rely on the OSHA regulations regarding presumed asbestos-containing materials, as the regulations are "exactly the type of things an industrial hygienist would consider and rely on in forming opinions in his work." Plaintiffs insist that any questions regarding the foundation for Cohen's reliance on the OSHA regulations go to the weight and not the admissibility of his opinion. The reasonableness of an expert's opinion, however, is "a question of degree, and may well vary with the circumstances." (*Buckwalter v. Airline Training Center* (1982) 134 Cal.App.3d 547, 553–554 [184 Cal.Rptr. 659].) For example, an expert's opinion, " 'may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact. [Citation.] Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]' [Citation.]" (*Powell v. Kleinman, supra*, 151 Cal.App.4th at p. 123.)

Here, Cohen's opinion that Casey was exposed to asbestos-containing materials is based on two OSHA regulations providing that buildings constructed before 1980 were built with presumed asbestos-containing materials. Notably absent is any factual support for the proposition that the challenged jobsites contained asbestos during the relevant time period. The instant case is analogous to *Andrews, supra*, 138 Cal.App.4th 96. There, the court determined that a similar declaration by Cohen lacked a sufficient factual basis to create a triable issue of fact. The court was specifically troubled with Cohen's " 're-entrain[ment]' " theory—that the plaintiff may have been exposed to asbestos fibers released into the air of an active naval ship almost two decades before he was aboard the ship because the asbestos fibers earlier released continually contaminate the surrounding air by reentrainment and circulation throughout the various ship compartments. (*Id.* at pp. 112–113.) In *Andrews*, the plaintiff produced no evidence that the defendant's product's gaskets were removed during an overhaul, and he admitted in his deposition testimony that he had no knowledge that he was exposed to one of the defendant's asbestos-containing products. (*Id.* at pp. 103, 111.) The court concluded that the trial court properly granted summary judgment in favor of the defendant because the plaintiff could not prove causation. (*Id.* at p. 99.)

Here, as well, plaintiffs did not produce any evidence that the dust and debris Casey allegedly was exposed to by Perini workers contained asbestos.

Indeed, at his deposition, Casey admitted that he did not know whether the dust and debris contained asbestos. Rather, he assumed there was "probably asbestos in whatever [the Perini workers] were cleaning up." Moreover, Casey was unable to recall the name of any products used at the jobsites. Casey also was unable to give a definitive answer when asked if he had any information or knowledge that he was exposed to asbestos through the activities or inaction of Perini, responding with the following answer: "I got what I got. I got it someplace and I got it from dust. . . . So if it wasn't on this job, it was on one of the jobs. You know, was it in that dust, I'm not an expert."

Cohen's declaration, in turn, relied on Casey's assertions that he worked alongside Perini workers, who were sweeping and cleaning asbestos-containing dust and debris. In his declaration, Cohen concluded that Casey was near "the manipulation of asbestos containing building products presumed to contain asbestos during the period of 1962 through 1971, including residue from manipulation of firespray which invariably contained asbestos . . . and surfacing materials . . . , and working alongside laborers employed by Perini Corporation sweeping and shoveling asbestos containing materials which would have entrained asbestos fi[b]ers into the air he breathed."

■ Here, as in *Andrews*, Cohen's conclusions are speculative and lack a sufficient foundation. His conclusions are based, in part, on Casey's speculation that the dust and debris contained asbestos, an assertion lacking a sufficient factual basis. Cohen's conclusion also rests on two regulatory presumptions that are similarly lacking any factual basis in the instant case. Without knowledge of certain foundational facts, an expert's opinion is "simply too tenuous to create a triable issue" regarding causation. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 781 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) Here, Cohen's declaration does nothing more than suggest the possibility of exposure without any basis in fact.

Relying on *Buckwalter v. Airline Training Center, supra,* 134 Cal.App.3d 547, plaintiffs contend that the court should have accorded Cohen more latitude in his opinion because there was no direct evidence of Casey's exposure to asbestos. Plaintiffs' reliance on *Buckwalter* is misplaced. There, the trial court permitted accident reconstruction experts to testify about the circumstances surrounding the midair collision of two airplanes because there were no eyewitnesses. (*Id.* at p. 551.) In addition to evidence of the wreckage and review of field service station records, the appellate court held that the plaintiffs' accident reconstruction expert could rely on the pilot training records of two pilots whom he concluded had a propensity for becoming confused during landings. (*Id.* at pp. 550, 551–553.) The court concluded that

it was reasonable for the experts to rely on the training records because there was little or no direct evidence upon which he could base his opinion. "With no eyewitnesses and very little radio communication data, the accident reconstruction experts were forced to attempt to recreate the routes flown by the respective airplanes even though the wreckage plot strongly suggested that at least one of the aircraft was not where it should have been. Since the . . . training records indicated instances of past confusion on the part of both [the pilots] during landing approaches, they provided the experts with at least one possible reason why one of the planes might have been out of position." (*Id.* at p. 554.)

■ Here, by contrast, other than presenting evidence placing Casey at the jobsites where Perini was the general contractor, plaintiffs proffered no evidence connecting Casey with any exposure to asbestos attributable to Perini at the challenged jobsites. Rather, Cohen's declaration that Perini exposed Casey to asbestos-containing materials was conjecture based upon inferences flowing from the generalities embodied in the OSHA regulations. This kind of opinion is of scant evidentiary value. (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106 [120 Cal.Rptr.2d 23] (*McGonnell*); see *Andrews, supra,* 138 Cal.App.4th at p. 112 [plaintiff must show exposure to respirable asbestos fibers from defendant's products to establish causation even under most lenient standards].) Indeed, exclusion of expert opinions that rest on conjecture or surmise is an inherent corollary to the foundational predicate for admission of expert evidence. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117, 1119 [8 Cal.Rptr.3d 363] [expert opinion that if "constellation of events" occurred, then the injury would occur, is not helpful absent additional evidence that more likely than not such "constellation of events" occurred].) Accordingly, an expert's opinion that something could be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist in a given case, is lacking foundation. (See *ibid.*)

These considerations, contrary to plaintiffs' contention, go to the admissibility of the Cohen declaration rather than to its weight. The critical assertions in Cohen's declaration were of a wholly conclusory nature. He opined that Perini exposed Casey to asbestos-containing materials in the course of its general contractor activities, but he offers no "reasoned explanation of why the underlying facts lead to" this conclusion. (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510–511 [11 Cal.Rptr.3d 653].) Rather, Cohen's opinion was based on assumed facts—the presence of asbestos-containing products in pre-1980 buildings—without any foundation for concluding the assumed facts exist in the instant case. (See *Jennings v. Palomar Pomerado Health Systems, Inc., supra,* 114 Cal.App.4th at p. 1119.)

Since an expert opinion "is worth no more than the reasons and facts on which it is based," the Cohen opinion lacks a proper foundation and his declaration has "no evidentiary value."[3] (*Bushling v. Fremont Medical Center, supra,* 117 Cal.App.4th at p. 510.) Accordingly, the trial court did not abuse its discretion in excluding Cohen's declaration.

### D. Plaintiffs Failed to Present Sufficient Evidence to Raise a Triable Issue of Fact Regarding Causation

■ A threshold issue in asbestos litigation is exposure to the relevant asbestos product. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 975–976 [67 Cal.Rptr.2d 16, 941 P.2d 1203] (*Rutherford*); *McGonnell, supra,* 98 Cal.App.4th at p. 1103.) "If there has been no exposure, there is no causation." (*McGonnell, supra,* at p. 1103.) In *Rutherford,* the California Supreme Court delineated the following two-part causation test to be used in asbestos cases: "[T]he plaintiff must first establish some threshold exposure to . . . asbestos-containing products, and must further establish in reasonable medical probability that a particular exposure or series of exposures was a 'legal cause' of his injury, i.e., a substantial factor in bringing about the injury." (*Rutherford, supra,* 16 Cal.4th at p. 982, italics & fn. omitted.) In the instant case, as correctly noted by plaintiffs, the issue of medical causation— the sufficiency of the exposure—is not presently before the court, as that issue was never raised in Perini's motion for summary judgment. Accordingly, we confine our analysis to whether plaintiffs have satisfied their initial burden of establishing some threshold exposure to asbestos-containing products attributable to Perini.

Plaintiffs assert that the trial court erred in granting summary judgment because they presented uncontradicted evidence that Casey was exposed to asbestos for which Perini was responsible. They point to records from the San Francisco Department of Building Inspection, which they insist "conclusively" show that Perini was the general contractor for the Building during the relevant time period. They also rely on the BAAQMD records, which they claim "conclusively" establish that asbestos abatement work done in the late 1990's through 2003 revealed that the fireproofing applied to the Building was, in fact, asbestos containing. Finally, they point to Cohen's declaration as demonstrating that the fireproofing debris that Casey was exposed to contained asbestos.

---

[3] By reason of this holding, we do not address plaintiffs' alternate claim that "[t]o the extent, if any, that the court may have relied on . . . hearsay" grounds to exclude Cohen's declaration, "that decision was improper." We also leave for another day the resolution of Perini's claims that the challenged OSHA regulations are not applicable in tort cases, and that, in any event, they improperly reverse the burden of proof in asbestos cases by requiring defendants to prove the absence of asbestos.

■ "Ultimately, the sufficiency of the evidence of causation will depend on the factual circumstances of each case." (*Rutherford, supra*, 16 Cal.4th at p. 958.) This is also true with respect to the evidence of the exposure component of causation in asbestos litigation. Mere speculation or conjecture about exposure to asbestos, however, is insufficient to demonstrate the existence of a triable issue of fact to preclude summary judgment. (*Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1289 [44 Cal.Rptr.2d 335] disapproved on another ground in *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 854–855, fn. 23 [where plaintiff testified he was unfamiliar with defendant and could not recall working in same area with defendant's employees constituted speculation and conjecture that they might have been in same place at different times].) Nor does the simple "possibility" of exposure create a triable factual issue. (*McGonnell, supra*, 98 Cal.App.4th at p. 1105 [speculation that at some time plaintiff might have cut into wall that might have contained defendant's compound that might have contained asbestos is insufficient evidence].)

The quality of evidence of exposure must be sufficient "to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment." (*McGonnell, supra*, 98 Cal.App.4th at p. 1105.) At the very least, the plaintiff must provide "circumstantial evidence . . . sufficient to support a reasonable inference" (*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1420 [37 Cal.Rptr.2d 902] (*Lineaweaver*)) that the "defendant's asbestos products or activities were present at plaintiff's work site" (*Smith v. ACandS, Inc.* (1994) 31 Cal.App.4th 77, 89 [37 Cal.Rptr.2d 457], disapproved on another ground in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245 [108 Cal.Rptr.2d 617, 25 P.3d 1096]).

Citing *Lineaweaver, supra*, 31 Cal.App.4th 1409, plaintiffs argue they presented sufficient circumstantial evidence of exposure. In *Lineaweaver*, three separate plaintiffs sued alleging exposure to asbestos insulation products while on the job. (*Id.* at p. 1412.) There, the trial court granted the defendant's motion for nonsuit for lack of sufficient evidence of exposure to the defendant's product. (*Id.* at pp. 1412–1413.) With respect to plaintiff Lineaweaver, the appellate court found sufficient circumstantial evidence to support a reasonable inference of his exposure to asbestos. (*Id.* at p. 1413.) The relevant evidence included that the defendant distributed asbestos insulation products to Lineaweaver's workplace beginning in 1948; Lineaweaver worked at that site from 1950 to 1984, repeatedly working with and around asbestos insulation; Lineaweaver worked throughout the sprawling refinery which had insulation over about two-thirds of its pipes and much of its equipment; and Lineaweaver saw boxes of the defendant's Pabco products at the refinery. (*Id.* at pp. 1419–1420.) While the court acknowledged there was no direct evidence that Lineaweaver was exposed to defendant-supplied

Pabco, it held the circumstantial evidence was sufficient to support a reasonable inference of exposure because "plaintiff has established that defendant's product was definitely at his work site and that it was sufficiently prevalent to warrant an inference that plaintiff was exposed to it during his more than 30 years of working with and around asbestos throughout the refinery." (*Id.* at p. 1420.)

The evidence here is not comparable to that held sufficient to raise a triable issue of fact in *Lineaweaver*. Not only was there no evidence that the jobsites at which Casey worked were laden with permanently installed asbestos products (as in a refinery), the evidence is uncontradicted that Casey could not identify any of the products used at the sites. Moreover, as to the Hotel, Casey had no recollection whether Perini was the general contractor at this site. To the extent Casey was able to place Perini at the Auditorium site, the only work he attributed to Perini at that site was carpentry and framing. There was no evidence that Perini disturbed any "surfacing materials" or fireproofing materials at the Auditorium site. Rather, Casey claimed that he worked alongside Perini workers, who cleaned up wood and dirt.

Finally, as to the Building, the BAAQMD asbestos abatement documents provided no evidence as to when any of the removed materials had been first installed, much less whether any such materials had been in place when Casey worked there in late 1963 or early 1964. To the extent the abatement records reference "fireproofing," they fail to reference the specific type of materials that had been abated, or the location from which the limited amount of material had been removed. Rather, the records simply generically reference the amount of removal in terms of square footage.

■ The evidence in this case stands in marked contrast to *Lineaweaver, supra*, 31 Cal.App.4th 1409, where the plaintiff had a 30-year career at a single refinery where asbestos products covered two-thirds of the piping and much of the equipment, and at least 50 percent of the asbestos insulation installed in the 1960's was identified as the defendant's product. (*Id.* at p. 1413.) The instant case is analogous to *McGonnell, supra*, 98 Cal.App.4th 1098, where we concluded that limited circumstantial evidence of exposure was insufficient to create a triable issue of fact (*id.* at pp. 1105–1106). In *McGonnell*, the plaintiffs' evidence suggested that the "Kaiser Cement products might have been used once on a construction project . . ." at the decedent's workplace. (*Id.* at p. 1105.) However, there was no evidence that these products contained asbestos at the time of their use. (*Ibid.*) As to the Kaiser Gypsum joint compound, the evidence indicated that it was "at least within the realm of possibility" that the decedent "encountered a wall with Kaiser [asbestos-containing] joint compound during his 24 years of employment . . . ." (*Ibid.*) In *McGonnell*, we concluded this mere "possibility" was

insufficient to create a triable issue of fact regarding causation. (*Ibid.*) We explained that it was "not enough to produce just some evidence"; rather, the evidence "must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment. [Citation.]" (*Ibid.*)

█  Here, as in *McGonnell*, all that exists is speculation as to causation. The evidence establishes only that given the relevant time period—the late 1960's and early 1970's—at some point Casey might have worked at jobsites where asbestos-containing products might have been used. This scant evidence is but "a dwindling stream of probabilities that narrow into conjecture." (*Lineaweaver, supra,* 31 Cal.App.4th at p. 1421.)

Even under the most lenient causation standards, there must be a "sufficient factual nexus between the negligent conduct and the injury . . . ." (*Lineaweaver, supra,* 31 Cal.App.4th at p. 1414.) Missing from the claimed "circumstantial evidence" in this case is any connection between Perini's activities and Casey's exposure to asbestos.

## III.  DISPOSITION

The judgment is affirmed. Perini is entitled to its costs on appeal.

Ruvolo, P. J., and Rivera, J., concurred.