Filed 12/15/15  Evans v. American Optical Corp. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KENNETH EVANS et al., | B257665 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. JCCP4674) |
| AMERICAN OPTICAL CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emilie Harris Elias, Judge.  Affirmed.

Farrise Firm, Simona A. Farrise; The Arkin Law Firm, Sharon J. Arkin for Plaintiffs and Appellants.

Foley & Mansfield, Thomas J. Tarkoff, Cynthia Y. Chan; Degani & Galston, Orly Degani for Defendants and Respondents.

## INTRODUCTION

Plaintiffs Kenneth and Dorothy Evans[1] sued Fluor Corporation (Fluor), along with a host of other defendants, alleging that Kenneth Evans (Evans) developed asbestosis from his exposure to asbestos when he helped to demolish a gas cooling tower over a two to three week period in the 1950s. The trial court granted Fluor's motion for summary judgment, concluding that plaintiffs failed to establish a triable issue of fact that Evans was exposed to asbestos from any Fluor products. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A. Complaint

Evans was diagnosed with asbestosis in 2011. Plaintiffs filed their complaint for personal injury and loss of consortium on May 15, 2012 against Fluor and multiple other corporate defendants. Plaintiffs alleged that Evans developed asbestosis as a result of his contact with a variety of asbestos-containing products over the course of his employment with Southern California Gas Company from the 1950s to the 1990s.

Plaintiffs alleged causes of action for negligence, breach of implied warranty, strict products liability, fraud, conspiracy to defraud, misrepresentation and fraudulent concealment, and premises liability, as well as a derivative claim for loss of consortium by Dorothy Evans. Plaintiffs sought compensatory and punitive damages arising from the asbestos-related injuries.

### B. Summary Judgment

#### 1. Fluor's Motion

Fluor moved for summary judgment or, in the alternative, summary adjudication. In its motion, Fluor relied on Evans' written discovery responses and deposition testimony to argue that Evans lacked, and would be unable to discover, evidence to show he was exposed to asbestos from "any products or services provided by Fluor" at any time during his employment.

---

[1] Kenneth Evans died on July 6, 2015, while this appeal was pending. We granted plaintiffs' unopposed motion seeking to substitute his wife, Dorothy, as his successor-in-interest in this action.

During discovery, Fluor propounded special interrogatories and requests for production of documents seeking identification of all witnesses, documents, and "each and every fact" in support of plaintiffs' allegations against Fluor. In response to the special interrogatories, Evans provided further details regarding his alleged exposure to asbestos: sometime in the 1950s, he helped demolish a natural gas cooling tower located at Station 90 in Avenal, California, over a period of 14-21 days. The tower, which he recalled as 60-80 feet tall, was "used to cool gas. Gas would run through copper piping into the cooling tower and water cascaded down on the piping to cool the gas." Evans recalled that "the cooling tower had a sign on it that said 'Fluor' located on the northeast bottom corner." He "assisted a demolition crew in cutting, welding, tearing, cleaning, and otherwise manipulating the cooling tower in the demolition process." Evans' response also echoed the general allegations in his complaint regarding Fluor, such as that "[s]ince its inception, Fluor designed, manufactured, sold, supplied, . . . installed, erected, overhauled, serviced and otherwise marketed FLUOR ASBESTOS-CONTAINING PRODUCTS for utility, commercial and industrial application."

In a similar response to Fluor's request for production of documents, plaintiffs provided a multi-page list identifying categories of documents, such as all discovery in the instant case, the depositions of the person(s) most qualified and custodian(s) of record for Southern California Gas Company and Fluor, including all such depositions "taken in prior asbestos litigation and all exhibits thereto," other responses or documents identified by Fluor in other cases "that are otherwise responsive but not specifically identified" (as well as several sets of identified responses), the contents of Fluor's "own records and files," an asbestos textbook, and various regulations and safety orders. In addition to Evans, plaintiffs identified two other witnesses who might have information supporting the claims against Fluor; both of those witnesses are deceased.

Fluor also pointed to excerpts from Evans' deposition testimony, in which Evans admitted that he did not know when the tower was built and his only basis for understanding that Fluor had built it was the "Fluor" sign he recalled on the outside of the tower. Evans also testified about the materials that made up the tower, identifying

3

redwood, copper bolts and nails, and copper pipes. He also recalled some "baffling" or "batting" on the outside of the tower, which he described as a "4-inch-wide shingle." Evans initially testified that this batting was made of wood:

"Q: And that's like a -- your common roofing shingle?

A: It was wood.

Q: I see. So the . . . shingle was made out of wood, as far as you could recall?

A: Yes.

Q: Okay. And that's the batting that you've just described?

A: Yes."

However, later in the deposition, while describing his work picking up pieces of wood falling from the tower as it was being demolished by a crane, Evans testified:

"[A]: The batting that was on the outside of this cooling tower was gray in color, real fuzzy looking. . . .

Q: Now, when I asked you previously about the batting, you said it was wood material, the batting?

A: I believe it was wood, but like I'm saying, it had that fuzz looking on it [sic]. I think it was-- I don't know what it was."

In an additional deposition taken for the purposes of trial preservation, Evans testified that the tower's "superstructure was redwood, and it had baffling on the outside, and I'm not sure what that was made of. It had a gray-looking, gray-looking color to it." Asked if he recalled any of the material of the tower "resembling in any way cement," Evans responded that the tower "was built over a cement pond." He did not otherwise identify cement, or any other asbestos materials, as part of the tower. Evans also testified that "there was dust in the air," during the demolition, which would get on his clothes and which he would breathe in.

### 2. *Plaintiffs' Opposition*

Plaintiffs filed an initial opposition to summary judgment in January 2014, requesting a continuance to conduct further discovery, particularly deposition testimony

4

from Union Tank Car Company (Union).[2]  Following a continuance of the summary judgment hearing and trial dates, plaintiffs filed a supplemental opposition containing additional evidence, including the deposition testimony of their expert, Charles Ay.  They argued, as they do on appeal, that Fluor had failed to meet its initial burden to demonstrate an absence of a triable issue, and that, in any event, plaintiffs had met their burden to produce evidence from which a jury could reasonably conclude that the Avenal tower was built by Fluor and contained asbestos.

Ay testified at his deposition that he has inspected "lots" of cooling towers over the years and that it was "[n]ot uncommon" to find asbestos-containing transite material on these towers.  In fact, of all the cooling towers he had tested, he could not recall an instance where the tower did not contain transite.  However, Ay acknowledged that he did not recall having inspected any tower built by Fluor.  Further, he had seen some towers constructed with baffling made of wood, instead of transite.  Ay opined that the Avenal tower contained transite baffling.  He based this opinion on Evans' testimony that the baffling was gray in color, coupled with his knowledge that transite was historically used on cooling towers.  He would not consider gray material to be wood, which is brown.  When Evans identified gray material, "that, to me, is a Transite-type material and not a wood baffle."  Ay also noted Evans' testimony that the demolition was dusty was consistent with transite, because when "wood falls, it breaks, it does not make dust. When transite falls and breaks, it makes dust."

Plaintiffs also supplemented their opposition with deposition testimony given in prior cases by William Breen, designated by Fluor as a person most knowledgeable (PMK).  Breen testified that Fluor Products did manufacture cooling towers as of 1947 until the sale of the division to Union in the late sixties.  The components came from

---

[2] Earlier that month, Fluor's custodian of records had testified during his deposition that any documents related to Fluor's cooling towers would have been transferred in the sale of the division to Union.  Plaintiffs served a subpoena seeking responsive documents on Union, but Union responded that it had no documents to produce.  The trial court then granted Fluor's motion to quash the subpoena, based on the discovery cutoff before trial.

Fluor, and some (but not all) of Fluor's towers used cement asbestos board siding (also called transite) on the outside. Fluor also made cooling towers with redwood siding. Breen stated that redwood siding looked different from cement siding, as "[o]ne is wood and is a redwood and the other is a whitish [sic] and is transite."

Plaintiffs produced no other evidence suggesting that Fluor built the Avenal cooling tower, or that the tower contained asbestos.

### 3. Trial Court's Ruling

At the hearing on the motion, the trial court relied on Evans' statement that the baffling material was wood. The court further found that Ay's opinion that the tower contained transite lacked foundation. Accordingly, the court granted summary judgment for Fluor. Plaintiffs timely appealed.

## DISCUSSION

Plaintiffs argue that Fluor failed to meet its initial burden to demonstrate that no triable issues of fact exist, and further, that plaintiffs provided sufficient evidence to raise a triable issue that the cooling tower in question was made by Fluor and contained asbestos. We conclude that summary judgment was proper because there is insufficient evidence to establish a probability that the Avenal tower contained asbestos. As such, we need not reach the issue of whether Fluor constructed the tower.

### A. Applicable Legal Standards

We review the trial court's summary judgment rulings de novo. (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 (*Scheiding*).) "'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his] evidentiary submission while strictly scrutinizing [the defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' [Citation.]" (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100 (*Andrews*).)

A defendant moving for summary judgment must make a prima facie showing that there are no triable issues of fact in order to meet its initial burden of production. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861; see also Code Civ. Proc.

6

437c, subd. (c).) "[A] defendant moving for summary judgment [must] present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id*. at p. 854, fn. omitted.) Once the defendant has met that burden, the burden shifts to the plaintiff to make a prima facie showing that a triable issue of material fact exists. (*Id*. at p. 850.) "The plaintiff . . . may not rely upon the mere allegations or denials of its pleading to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . .' [citations].)" (*Scheiding*, *supra*, 69 Cal.App.4th at p. 69.)

"'A threshold issue in asbestos litigation is exposure to the defendant's product. . . . If there has been no exposure, there is no causation.' [Citation.]" (*Whitmire v. Ingersoll–Rand Co.* (2010) 184 Cal.App.4th 1078, 1084.) It is plaintiffs' burden to establish some threshold exposure to asbestos through Fluor's products. (*Casey v. Perini Corp*. (2012) 206 Cal.App.4th 1222, 1236 (*Casey*).)[3]

B. *Fluor Met Its Initial Burden On Summary Judgment*

We first turn to plaintiffs' claim that Fluor failed to meet its initial burden to produce evidence sufficient to make a prima facie showing that plaintiffs could not establish causation. As discussed above, Fluor based its summary judgment motion on plaintiffs' discovery responses and deposition testimony, arguing that this evidence demonstrated that plaintiffs did not have, and could not possibly obtain, evidence of exposure.

A defendant moving for summary judgment "cannot simply 'argue' that a plaintiff lacks sufficient evidence to establish causation; the defendant must make an affirmative 'showing' that the plaintiff cannot do so." (*Andrews, supra*, 138 Cal.App.4th at p. 103.)

_____

[3] To ultimately prevail in their underlying claim, plaintiffs would need to establish that this exposure was to a reasonable medical probability a substantial factor in contributing to any asbestos-related disease suffered by Evans. (See *Rutherford v. Owens–Illinois, Inc.* (1997) 16 Cal.4th 953, 974-977.) However, the parties did not address this issue in their summary judgment briefing or on appeal, focusing instead on the preliminary question of the sufficiency of proof that the cooling tower was made by Fluor and contained asbestos.

7

Circumstantial evidence supporting a defendant's motion "can consist of 'factually devoid' discovery responses from which an absence of evidence can be inferred," but "the burden should not shift without stringent review of the direct, circumstantial and inferential evidence." (*Scheiding, supra*, 69 Cal.App.4th at p. 83.) Several of the cases relied on by the parties demonstrate the circumstances under which a defendant may point to the absence of evidence in plaintiff's discovery responses to infer that the plaintiff does not have, and cannot obtain, sufficient evidence to survive summary judgment.

In *Andrews*, for example, the plaintiff lacked personal knowledge of any exposure to the defendant's asbestos-containing products. (*Andrews, supra*, 138 Cal.App.4th at p. 103.) On summary judgment, defendant also pointed to Andrews' written discovery responses, which contained "little more than general allegations" that Andrews was exposed to products "constructed, assembled, supplied and/or distributed" by defendant, and thus lacked "specific facts showing that Andrews was actually exposed to asbestos-containing material" from defendant's products. (*Id*. at p. 104.) In affirming summary judgment for defendant, the Court of Appeal stated that if plaintiffs "respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses." (*Id*. at p. 107; see also *Casey, supra*, 206 Cal.App.4th at pp. 1229-1230 [summary judgment proper where plaintiff's deposition "made clear that he had no knowledge" and his written discovery responses "did not establish any specific evidence" of exposure].)

By contrast, in *Weber v. John Crane, Inc*. (2006) 143 Cal.App.4th 1433, 1436, defendant moved for summary judgment based only on the plaintiff's deposition testimony that he did not recall ever working with a product manufactured by defendant, did not recognize defendant's name, and had no personal knowledge of other documents or witnesses that could provide further information. The court noted that defendant "did

not support its motion with evidence that plaintiffs failed to provide meaningful responses to comprehensive interrogatories designed to elicit all the evidence plaintiffs had to support their contention of liability," nor did defendant "show that, after extensive discovery, plaintiffs asserted they had no additional information." (*Id*. at p. 1442.) Thus, because defendant had not conducted discovery that was "sufficiently comprehensive," the court held that defendant could not create an inference "either of nonexposure or of the inability to prove exposure" simply by pointing to plaintiff's lack of personal knowledge in response to a handful of deposition questions. (*Id*. at p. 1439.) Rather, "defendant must make an affirmative showing that the plaintiff will be unable to prove its case by any means." (*Ibid*.) The court also expressly distinguished *Andrews*, noting that there, "[i]n light of the interrogatory questions, the plaintiffs' failure to provide any information in effect admitted that they had no further information." (*Id*. at p. 1440 (citing *Andrews, supra*, 138 Cal.App.4th at pp. 106-107).)

Here, the state of the evidence draws this case closer to the factual circumstances of *Andrews* rather than *Weber*. While Evans was able to provide some details during his deposition testimony linking the tower to Fluor, his discovery responses provided no specific facts suggesting that the tower contained asbestos. The evidence that Evans now contends supports that crucial link—the testimony of Fluor's PMK and Evans' expert— was not identified in his written discovery responses.[4] And Evans' list of documents contained in his responses does not provide any further factual detail. Thus, Fluor was entitled to rely on plaintiffs' responses to its comprehensive discovery to establish that plaintiffs lacked evidence of exposure.

Plaintiffs' reliance on *Ganoe v. Metalclad* (2014) 227 Cal.App.4th 1577 is similarly unavailing. In *Ganoe*, we reversed summary judgment, concluding that plaintiffs' discovery responses contained specific facts showing that the defendant had exposed plaintiff to asbestos. The plaintiffs identified evidence that the alleged exposure occurred during the removal of old insulation, that Ganoe was present during this work,

_____

[4] We further conclude below that this evidence was insufficient to meet plaintiffs' burden on summary judgment.

9

expert testimony (also by Ay) that insulation of the type described "'was almost certainly asbestos-containing,'" that defendant had performed insulation work at the same plant during the time in question, and that the only insulation work at the plant during that time period was the work done in Ganoe's presence, thus allowing a reasonable inference that defendant "'more likely than not'" exposed Ganoe to asbestos. (*Id*. at pp. 1580-1581.) Here, as discussed above, plaintiffs did not provide any evidence in their discovery responses linking Evans' observation of the cooling tower materials with any evidence that such materials were asbestos-containing or manufactured by Fluor. We therefore conclude, as the trial court did, that Fluor made a sufficient affirmative showing to meet its initial burden on summary judgment.

*C. Plaintiffs Failed To Establish a Triable Issue of Material Fact as to Causation*

Plaintiffs contend that, even if Fluor met its initial burden, they produced sufficient evidence in opposition to summary judgment to raise a triable issue as to causation. We disagree.

"The quality of evidence of exposure must be sufficient 'to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment.' [Citation.]" (*Casey, supra*, 206 Cal.App.4th at p. 1237.) Plaintiffs must provide "'circumstantial evidence . . . sufficient to support a reasonable inference' (*Lineaweaver v. Plant Insulation Co*. (1995) 31 Cal.App.4th 1409, 1420 (*Lineaweaver*)) that the 'defendant's asbestos products or activities were present at plaintiff's work site' [citation]." (*Ibid*.) "Mere speculation or conjecture about exposure to asbestos, however, is insufficient" to preclude summary judgment. (*Ibid*.; *Andrews, supra*, 138 Cal.App.4th at p. 108 [citation omitted].) Nor does the simple "possibility" of exposure create a triable factual issue. (*McGonnell v. Kaiser Gypsum Company, Inc.* (2002) 98 Cal.App.4th 1098, 1105 (*McGonnell*) [speculation that at some time plaintiff might have cut into wall that might have contained defendant's compound that might have contained asbestos is insufficient evidence].)

Plaintiffs rely on three pieces of evidence to meet their burden: (1) the testimony by Breen, Fluor's PMK, that Fluor constructed cooling towers using transite siding

10

during the relevant time period; (2) Evans' description of the baffling on the Avenal tower as "gray" and "fuzzy looking"; and (3) their expert's opinion that, given his knowledge of cooling towers and Evans' description, the Avenal tower had transite baffles.

None of this evidence provides sufficient circumstantial support to allow a reasonable inference that the Avenal tower was constructed with asbestos-containing transite baffles. Breen testified that Fluor built two types of cooling towers during this period—some made with redwood (non-asbestos) baffles, and some made with transite (asbestos-containing) baffles. This practice was confirmed by Ay, based on his general knowledge of cooling towers, though he lacked any specific knowledge as to towers built by Fluor. Thus, while Breen's testimony raises the *possibility* that the Avenal tower contained asbestos (assuming it was built by Fluor), it does not establish a *likelihood* that this was so.

Evans' own testimony similarly does not establish a likelihood of exposure. He testified several times during his deposition that the baffles on the Avenal tower were made out of wood; upon further questioning, he stated that he believed the material was wood, but that it was gray and "fuzzy looking," and then that he did not know what the baffling was made of. Evans never suggested that the baffling was cement, despite a direct question on that point. Nor did he submit any further explanation in his opposition to summary judgment regarding his descriptions of the baffling material.

As such, plaintiffs rely heavily on their expert to attempt to demonstrate a triable issue of fact. But "[p]laintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation or reasoning." (*McGonnell, supra*, 98 Cal.App.4th at p. 1106.) "'"[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]" [Citation.]'" (*Casey, supra*, 206 Cal.App.4th at p. 1233.) Ay's general statements regarding historical practices for building cooling towers cannot establish that this particular cooling tower contained

11

asbestos. Ay rejected Evans' testimony that the baffles were made of wood. Based only on Evans' testimony describing the material as gray, Ay concluded that the baffling was made of transite.[5] But just as Evans' testimony cannot provide the foundation to show that the tower was likely constructed with transite, plaintiffs cannot base their expert's opinion on the same inadequate foundation. Ay's opinion is "simply too tenuous to create a triable issue" regarding causation. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 781.) Without evidence of actual exposure to asbestos, Ay's opinion "creates only 'a dwindling stream of probabilities that narrow into conjecture.'" (*McGonnell, supra*, 98 Cal.App.4th at p. 1105.) Similarly, Ay's conclusory statement regarding the dust produced by the demolition lacks sufficient foundation to provide evidentiary value. Even under the most lenient standards, a plaintiff must demonstrate a "sufficient factual nexus between the negligent conduct and the injury." (*Lineaweaver, supra*, 31 Cal.App.4th at p. 1414.) Here, plaintiffs fail to provide the requisite nexus between the materials in the cooling tower and Evans' exposure to asbestos, and summary judgment was proper.

## DISPOSITION

We affirm the order granting summary judgment. Respondents are awarded their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


I concur:


WILLHITE, J.

---

[5] Plaintiffs' counsel conceded in her October 15, 2015 letter to the court that Ay did not reference, or rely on, Evans' description of the baffling material as "fuzzy." Instead, Ay referred only to the color when he testified that he considered wood baffling to be brown, while gray "to me, is a Transite-type material."

12

EPSTEIN, P. J.

I respectfully dissent.

Because I am satisfied from the record that appellant has raised a triable issue of material fact on each of the factual issues he must prove, I cannot join the opinion of my colleagues that he has not.

In order to succeed, appellant must prove that (1) he is suffering from asbestosis, (2) as a result of exposure to asbestos while working on the dismantling of a water cooling tower, (3) some of the materials of which contained that substance, and (4) respondent Fluor as owner or operator of the tower was the party responsible for the dismantling and is subject to liability for the injury. It is undisputed that appellant is suffering from asbestosis, and that he participated in the dismantling of the water cooling tower. What is disputed is whether Fluor was responsible for dismantling the tower and whether appellant was exposed to asbestos material which was a part of the tower.

The tower to be dismantled displayed a sign reading "Fluor." The opinion of my colleagues correctly concludes that the presence of the sign on the tower with the company name Fluor is sufficient for a prima facie showing that Fluor Corporation was responsible for the dismantling. (See *Smith v. Deutsch* (1948) 89 Cal.App.2d 419, 424, and cases cited.)

The principal question in this appeal is whether there is a prima facie showing that appellant was exposed to asbestos as a result of the dismantling. That depends, in turn, on whether the water tank structure contained asbestos material. The tower structure itself was made of redwood, and it is not disputed that, to aid in its cooling function, baffles were bolted onto the water tank. The issue in the case is whether those baffles were constructed of a material containing asbestos.

Appellant testified that the baffles were grayish in color and "fuzzy" in appearance. Redwood itself has neither of these features. Appellant's expert, Charles Ay, testified to his considerable experience with water cooling towers. He testified that, at the time relevant to this case, cooling towers were fitted with baffles, some made of wood and some made of Transite, a cement or cement-like material containing asbestos.

1

In Ay's experience most, although not all, of these towers, including Fluor towers, had Transite baffles. Unlike redwood, which has a reddish appearance, Transite has a whitish appearance. When it collapses, Transite raises dust; redwood creates splinters, not dust. As shown by the color of the baffles and the dust raised when the tower collapsed, Ay stated his opinion that the baffles were made of Transite, an asbestos based material, and not wood. He summarized: "Transite is historically used on cooling towers. It is the combination of the color, my knowledge of cooling towers and the use of Transite that lead me to one conclusion and one conclusion only, that the material described here was, in fact, asbestos containing."

This evidence is sufficient to present a triable issue of material fact in support of appellant's claim that the baffles attached to the cooling tower were made of Transite, an asbestos material, and that appellant was exposed to asbestos when the tower collapsed, releasing asbestos dust.


EPSTEIN, P. J.


2