Filed 10/19/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MARY LYONS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>    Defendant and Respondent. | A150567<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-16-276495) |

Plaintiff Mary Lyons appeals from the summary judgment entered against her on her product liability claim against Colgate-Palmolive Company (Colgate), based on the allegation that she developed mesothelioma from the use of Colgate's Cashmere Bouquet cosmetic talcum powder. In granting the motion, the trial court failed to comply with Code of Civil Procedure section 437c, subdivision (g), requiring a written order specifying the reasons for its determination and "specifically refer[ring] to the evidence proffered in support of and, if applicable, in opposition to the motion that indicates no triable issue exists." Its tentative ruling adopted after the hearing indicated only its view that "Plaintiff failed to submit evidence to create a triable issue whether she was exposed to asbestos-containing products or materials attributable to defendant." Although the judgment prepared by defense counsel and signed by the court provided greater specificity in adopting defendant's sundry arguments, the record nonetheless contains substantial evidence creating a triable issue as to whether Colgate's Cashmere Bouquet talc contained asbestos that may be found to have been a substantial cause of plaintiff's mesothelioma.

1

## Background

The 24-volume record in this case contains lengthy evidence submitted in support of and opposition to the summary judgment motion. It is unnecessary to summarize all of the evidence, however, because summary judgment rests on the premise that plaintiff failed to create a triable issue of fact as to whether Colgate's Cashmere Bouquet talcum powder which she applied to herself for some 20 years contained asbestos. For present purposes it is sufficient to describe the evidence plaintiff produced creating a triable issue as to that fact.

Plaintiff alleged and at her deposition testified that she used Cashmere Bouquet talcum powder from the early 1950's to the early 1970's. As a young child, she testified and her older cousin confirmed, she and her mother took baths together and her mother applied the talcum powder to her after every bath. When she was "about eight" in 1955, she began regularly applying the talcum powder herself and continued to do so after every bath until two or three years after she left her mother's home in the early 1970's. In October 2015 she was diagnosed with malignant mesothelioma.

Plaintiff did not retain any containers or packaging of the talcum powder, but she and her cousin recalled that the container was a "pink tin can" on which were "little pink flowers" and the words "Cashmere Bouquet." The container was about four or five inches high, with a pull-off cap and a shaker-can top with holes.

Colgate manufactured Cashmere Bouquet talcum powder from 1871 to 1985, and continued marketing the product until 1995, about the time that the United States Environmental Protection Agency reported that the presence of asbestos in talc makes it a human carcinogen.

The talc Colgate used in its Cashmere Bouquet talcum powder came from three different sources: the Val Chisone mine in Italy; Willow Creek, Montana; and Regal, North Carolina. An individual using Cashmere Bouquet from 1960 to 1977 would have used talc that originated from one or all of those locations. In opposition to the summary judgment motion, plaintiff presented considerable evidence to the effect that talc from each of the three sites contained some form of asbestos. For present purposes, it is

sufficient to provide a partial summary of the proffered testimony of plaintiff's expert, Sean Fitzgerald.

Fitzgerald's declaration in opposition to the summary judgment motion begins with a statement of his expert credentials: "I am a Senior Research Scientist at Scientific Analytical Institute. I am a licensed Professional Geologist, mineralogist, and asbestos expert, with 30 years of experience analyzing asbestos minerals and researching and developing the science of asbestos. I am familiar with and have substantial training and experience in the analysis of asbestos and asbestos-containing materials, including by transmission electron microscopy, scanning electron microscopy, x-ray diffraction, and polarized light microscopy. I am also familiar with OSHA, NIOSH and EPA methods and regulations regarding the analysis of asbestos and asbestos-containing materials. [¶] In my years of service, I have firsthand experience with many of the key events that have impacted the asbestos analytical community, including product identification of asbestos-containing materials, discovery and interpretation of asbestos contamination in vermiculite from Libby Montana, discovery and interpretation of environmental impact of naturally occurring asbestos in California and Virginia, even analysis of materials from the World Trade Center before and after 9/11. I have also worked with mine and quarry sites to identify possible occurrences of asbestos, and am experienced in analyzing complex mixed mineral assemblages such as talc contaminated with asbestos." The declaration provides the specifics of Fitzgerald's experience, professional associations, expert testimony in other cases, lectures, and writings (including papers entitled "Analysis of Talc for Asbestos" and "Asbestos in Commercial Cosmetic Talcum Powder as a Cause of Mesothelioma in Women").

Fitzgerald states that "[t]alc from all three of [the sources identified by Colgate as the sources of its talc] was contaminated with asbestos in the mine. [¶] I have personally confirmed the presence of asbestos in all three mine sources and the Cashmere Bouquet products. I have determined the presence of asbestos in the microscope in analysis of samples that I took directly from both the North Carolina and Montana sources. I have determined the presence of asbestos in AGI 1615 talc provided to me from the Italian

3

source. I have repeatedly determined the presence of asbestos in Cashmere Bouquet product samples in years of repeated testing by industry-standard asbestos analytical techniques." In lengthy sections of the declaration entitled "The Minerology of Talc and Asbestos," "Geological Evidence of Asbestos in Source Talc Cores for Cashmere Bouquet," "Historical Testing of Source Ores to Cashmere Bouquet," "Testing of Cashmere Bouquet Confirms Asbestos," "Colgate's Own Testing Confirms Asbestos in Cashmere Bouquet," among other sections refuting the opinions of Colgate's experts, the declaration provides specifics leading to the following conclusions: "The Cashmere Bouquet product used by Ms. Lyons from the early 1950s into the 1970s included asbestos. Bulk testing by my laboratory and the laboratories of my coauthors has repeatedly found asbestos in Cashmere Bouquet. The results of such testing are consistent with the makeup of the product, the ore, and the geology of the talc sources used by its manufacturer, Colgate. Further, releasability tests of Cashmere Bouquet have repeatedly found significant concentrations of airborne asbestos, including the same three mineral species historically identified, namely chrysotile, anthophyllite, and tremolite asbestos, when these historic products were used in a manner consistent with the testimony of Ms. Lyons and her family. [¶] It is therefore my opinion, to a reasonable degree of scientific certainty, that Ms. Mary Lyons was repeatedly exposed to significant airborne asbestos, hundreds if not thousands of times greater than background or ambient levels, by her use of Cashmere Bouquet talcum powder products, and her family's use of said product on and around Ms. Lyons." The declaration includes 39 exhibits totaling close to 800 pages, consisting of scientific papers, geological surveys and other documents supporting these conclusions.

Following entry of the order granting summary judgment, plaintiff moved for reconsideration, submitting in support of the motion additional testimony from another expert supporting Fitzgerald's opinions. The court denied the motion on the ground that the additional evidence should have been submitted earlier (rejecting plaintiff's argument that the testimony was not available earlier), and proceeded to enter judgment in favor of Colgate. Plaintiff has timely appealed.

4

**Discussion**

Plaintiff contends that the evidence submitted in support of the summary judgment motion was insufficient to carry Colgate's burden to conclusively negate her claim and shift to plaintiff the burden of presenting evidence creating a triable issue of fact on the material issue of her exposure to asbestos from the use of Colgate's talcum powder. Plaintiff contends that Colgate's evidence establishes at most that some of its talcum powder might not have contained asbestos, which plaintiff argues is not sufficient to negate her claim. We need not address this issue, however, because assuming that Colgate carried its burden—and Colgate did submit expert testimony that Cashmere Bouquet "was free of asbestos"—it is clear that plaintiff submitted sufficient evidence to the contrary to a create a triable issue.

Colgate argues and the trial court seems to have placed weight on the fact that plaintiff is unable to produce any of the Cashmere Bouquet tin cans containing the talcum powder that she used, so that "there is no evidence of any testing of a Cashmere Bouquet product that Ms. Lyons actually used to determine whether it contained asbestos." The absence of the packaging and testing of the very container that plaintiff used is hardly sufficient reason to reject the testimony identifying the product that she used, combined with the expert testimony that all of that product contained "significant concentrations of airborne asbestos."

In adopting the form of judgment submitted by Colgate, the trial court also cited Fitzgerald's acknowledgement in prior litigation that the quantity of asbestos in a particular talc sample could vary, but Fitzgerald did not agree that some talc might contain no significant level of asbestos.[1] And that is clearly not the thrust of his

---

[1] For example, one passage from Fitzgerald's prior testimony cited by the court was the following: "[Question:] I want to see if I understand what you're saying. For any given pallet that is leaving the mill that has been mined and milled in Val Germanasca, you're not saying that that pallet contains asbestos to a reasonable degree of scientific certainty; right? . . . [Answer:] No. That's not what I'm saying. I'm saying that it's likely. [Question:] Okay. And so what you're saying is that it's possible that that pallet contains

5

declaration submitted in opposition to summary judgment. "Bulk testing by my laboratory and the laboratories of my coauthors [detailed in the lengthy declaration] has repeatedly found asbestos in Cashmere Bouquet." The trial court also referred to the fact that prior tests failed to detect the presence of asbestos in the raw talc used in Cashmere Bouquet, but Fitzgerald's declaration asserts that many of the samples used in those tests were retested and found to contain asbestos, and that the methods used in others of those tests were incapable of detecting asbestos because of its light weight.

The judgment prepared by Colgate's counsel also includes the assertion that the opinions of plaintiff's experts "lack a proper foundation and are contradicted by prior sworn testimony." So far as the record appears, however, none of the material opinions expressed by Fitzgerald contradict the prior testimony cited by Colgate. As to the foundation for those opinions, Colgate submitted numerous written objections to plaintiff's evidence but did not assert its objections at the hearing, so that the objections were waived (Code Civ. Proc., § 437c, subd. (b)(5) ["Evidentiary objections not made at the hearing shall be deemed waived."]), and the trial court did not rule on any of those objections, so that they are presumed to have been overruled (Code Civ. Proc., § 437c, subd. (c); *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534). In all events, it is not clear in what respect the trial court considered the foundation for Fitzgerald's opinion to be lacking and any deficiency in that respect is not apparent.

The judgment prepared by Colgate's attorneys also recites that "the evidence supports no more than a possibility that Ms. Lyons was exposed to asbestos from her use of Cashmere Bouquet talcum powder, and is thus insufficient to give rise to a triable issue of material fact." However, the evidence that talc from all three mines used in the manufacture of Cashmere Bouquet contained asbestos, repeatedly found in multiple tests and studies conducted before, during and after the 1950-1970 time period, coupled with plaintiff's use of the product over those 20 years, particularly in the absence of evidence

---

asbestos, but you can't quantify that possibility? . . . [Answer:] It's a more qualitative assertion that I'm making, yes."

of any other source of the asbestos causing plaintiff's mesothelioma, creates more than an unsupported possibility. Rather, there is a sufficient basis for the "inference[] reasonably deducible from the evidence" that all or most of the Cashmere Bouquet that plaintiff used almost daily for 20 years contained harmful asbestos. (*Maxwell v. Colburn* (1980) 105 Cal.App.3d 180, 185.)

The cases cited by Colgate and by the trial court in the judgment prepared by Colgate to establish the insufficiency of plaintiff's evidence are readily distinguishable. In *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, for example, the defendant produced one product that contained asbestos, Colton gun plastic cement, and another product that did not contain asbestos, Colton plastic cement. The sole product identification witness testified that the plaintiff used the non-asbestos-containing plastic cement and "did not recall ever seeing the Colton gun plastic cement brand name. . . . He first heard of Colton gun plastic cement when he was deposed in [the] lawsuit." (*Id.* at p. 590.) Based "on the evidence presented," the court understandably concluded, "guesswork is required for the trier of fact to conclude that the product [plaintiff] encountered was Colton gun plastic cement." (*Id.* at p. 592.)

In *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, plaintiffs alleged that the decedent had been exposed to asbestos by Bechtel Construction at two PG&E sites constructed by Bechtel, "Contra Costa Buildings 6 and 7." There was only questionable evidence that Bechtel was involved in the installation of insulation at those buildings, but "[e]ven if plaintiffs could prove that Bechtel was the contractor for buildings 6 and 7, they have failed to present sufficient evidence from which to conclude that the insulation installed there, and to which Whitmore was exposed, contained asbestos. The specifications for buildings 6 and 7 called for the use of various types of thermal insulation, including both high temperature and medium temperature insulation. Plaintiffs submitted no evidence that the high temperature insulation contained asbestos. The medium temperature insulation specified was '[e]ighty-five percent magnesia,' which appears to generally include asbestos, although we note that nothing in the record demonstrates that 85 percent magnesia manufactured in the 1960's necessarily contained

asbestos. However, even if we assume that the medium temperature insulation did contain asbestos, there is no evidence demonstrating that this type of insulation, as opposed to the high temperature insulation, was actually installed on the pumps, valves, and boilers located in the vicinity in which Whitmire worked, much less evidence that Whitmire was exposed to such asbestos with 'enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor in causing [Whitmire's] injuries.' " (*Id.* at p. 1093.)

In *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, the plaintiffs sought to hold Kaiser Gypsum Company, Inc. and Kaiser Cement Corporation responsible for the decedent's exposure to asbestos contained in its products delivered to the hospital at which the decedent had been employed as a plumber and pipefitter. The decedent had testified that "he had never heard of a company called Kaiser Gypsum. As far as he knew, he had never worked with Kaiser Gypsum products, or near others using Kaiser Gypsum Products." (*Id.* at p. 1101.) "Viewed in its best light, plaintiffs' evidence suggests that Kaiser Cement products might have been used once on a construction project at [the hospital]. There is no evidence, however, that these products contained asbestos at the time of their use. . . . [¶] . . . Although the joint compound was delivered to the contractor a few years before McGonnell began his employment at [the hospital], it is at least within the realm of possibility that McGonnell encountered a wall with Kaiser joint compound during his 24 years of employment at [the hospital]. [¶] Does this possibility create a triable issue of fact? We think not. . . . All that exists in this case is speculation that at some time McGonnell might have cut into a wall that might have contained Kaiser joint compound that might have contained asbestos. The evidence creates only 'a dwindling stream of probabilities that narrow into conjecture.' " (*Id.* at p. 1105.)

In *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, plaintiff claimed that her decedent had been exposed to asbestos in the dust at three job sites at which the defendant Perini Corp. was general contractor. "At his deposition, Casey [the decedent] testified that he had worked at the Building as an apprentice plumber for approximately

six months in the mid-1960's. He did not know if any of the products he had used, or were used by others in his presence, contained asbestos. He was also unable to identify the brand name, manufacturer or supplier of any of the materials that had generated the dust later swept up or disturbed by Perini workers. Casey did not know if the dust and debris contained asbestos. As to the Auditorium jobsite, Casey recalled that Perini was involved in carpentry and framing. To the extent Perini's activities created dust and debris, Casey thought there was 'probably asbestos in whatever [the Perini workers] were cleaning up.' Casey, however, did not know the brand name or manufacturer of any of the materials used at the Auditorium jobsite. He also could not differentiate between products that allegedly contained asbestos and those that did not. Finally, as to the Hotel jobsite, Casey did not know whether Perini was even the general contractor at that site." (*Id*. at pp. 1225-1226.) "Casey's deposition made clear that he had no knowledge about whether any of the products that others used or disturbed in his presence contained asbestos." (*Id.* at p. 1229.) "Notably absent [from the expert's opinion that Casey was exposed to asbestos] [was] any factual support for the proposition that the challenged jobsites contained asbestos during the relevant time period. . . . [¶] Here, as well, plaintiffs did not produce any evidence that the dust and debris Casey allegedly was exposed to by Perini workers contained asbestos." (*Id.* at p. 1233.)

Similarly, in *Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, the plaintiff claimed he had contracted an infectious fungal disease, called "Valley Fever," from his exposure to contaminated soil placed in a vacant lot near his place of work referred to as "Dumbo Downs." (*Id.* pp. 1328-1329.) In rejecting as speculative the sufficiency of plaintiff's evidence of causation and upholding summary judgment in favor of the contractors that placed the soil at that site, the court concluded: "Miranda submitted evidence the soil, and sometimes the air, in Southern California is known to contain the pathogen causing his disease. This is evidence from which the jury could link dust inhalation in Southern California and his Valley Fever. However, there was no circumstantial evidence from which the jury could reasonably infer Dumbo Downs, as opposed to any other specific dirt pile, was the source of the *Cocci* fungal spore that

infected Miranda. Dumbo Downs was only one of many reasonably possible sources of dust that may have contained the pathogen." (*Id*. at p. 1342.) While there was no evidence in that case that the soil deposited by the defendants was the contaminated soil that caused or contributed to cause the plaintiff's cancer, the court reaffirmed that " '[P]laintiffs may prove causation in asbestos-related cancer cases by demonstrating that the plaintiff's exposure to defendant's asbestos-containing product in reasonable medical probability was a substantial factor in contributing to the aggregate dose of asbestos the plaintiff or decedent inhaled or ingested, and hence to the risk of developing asbestos-related cancer.' " (*Id.* at p. 1338.)

In the present case, unlike those cited in support of the summary judgment, there is no question that plaintiff was exposed to the product alleged to contain the asbestos. The undisputed evidence is that for some 20 years plaintiff regularly applied Cashmere Bouquet to her body. The only question here is whether the Cashmere Bouquet contained asbestos. As to that critical issue, while Colgate has produced evidence tending to show that it did not, the testimony of Fitzgerald unquestionably creates a triable issue that it did, without considering any of plaintiff's other evidence.

Because plaintiff has produced evidence creating a triable issue of fact on the critical issue disputed by Colgate, summary judgment should not have been granted and the judgment must be reversed.

**Disposition**

The judgment is reversed.[2]

---

[2] The request for judicial notice of trial court proceedings and rulings in other cases is denied. An unpublished decision from another division of this court has also been brought to our attention. While the unpublished opinion may not be cited (Cal. Rules of Court, rule 8.115(a)), we note that there are many distinctions between the facts and evidence in that case and in the present case.

                                     _____

                                     Pollak, Acting P.J.

We concur:


_____

Siggins, J.


_____

Jenkins, J.


A150567

11

| Trial court: | San Francisco County Superior Court |
| --- | --- |
| Trial judge: | Honorable Garrett L. Wong |
| Counsel for plaintiff and appellant: | SIMON GREENSTONE PANATIER BARTLETT PC<br>Brian P. Barrow |
| Counsel for defendant and respondent: | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Adam M. Abensohn<br>Daniel H. Bromberg<br>Morgan W. Tovey |

A150567